**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RHONDA RAINWATER AND JAMES RAINWATER, | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION No. 4:15-CV-746 |
| v. | § § | JUDGE RON CLARK |
| RAGOZZINO FOODS, INC. and NANCY RAGOZZINO, | § § | VSL |
| *Defendants.* | § § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Defendants Ragozzino Foods, Inc. and Nancy Ragozzino move to dismiss Plaintiffs Rhonda and James Rainwater's Complaint. (Dkt. # 9). The court grants in part Defendants' Motion to Dismiss (Dkt. # 9) and dismisses Mrs. Rainwater's breach of employment contract and duress claims, and all of Mr. Rainwater's claims, for failure to state a claim; the court denies Defendants' Motion to Dismiss regarding Mrs. Rainwater's claims pursuant to section 15.50 of the Texas Business and Commerce Code, Mrs. Rainwater's tortious interference claim, and Mrs. Rainwater's quantum meruit and unjust enrichment claims.

### BACKGROUND

On August 17, 2015, Plaintiffs filed suit in state court in Cooke County against Defendants. On October 26, 2015, this case was removed to this court. Plaintiffs are residents of Texas. Defendants are residents of Connecticut. Plaintiffs seek damages of over $1,000,000.00. The following allegations are taken from Plaintiffs' State Court Complaint and are assumed to be true for purposes of this Order. *See* Dkt. # 6.

1

Mrs. Rainwater works in the frozen "custom" meal industry. There only a few businesses that produce both "ready to eat" and "ready to heat" meals and utilize the assembly line technique using hand labor. During her ten years of experience in this industry, Mrs. Rainwater received specialized training specific to this industry and developed relationships with contacts throughout the industry.

Ragozzino Foods, Inc. is a large corporation that manufactures frozen entrees, appetizers, sauces, and soups. Previously, it primarily functioned in the food service industry providing its frozen food to restaurants, home delivery connoisseurs, and one or two retailers. However, Ragozzino Foods, Inc. sought to be a bigger player in the industry within private label and co-pack industry.[1]

Nancy Ragozzino is the president of Ragozzino Foods, Inc. She primarily handles the day-to-day activities, oversees the company's productivity, and hires and manages employees, among other duties. Ms. Ragozzino hired Mrs. Rainwater to leverage the relationships that Mrs. Rainwater had developed through her years of service in the frozen custom meal industry to lead Ragozzino Foods, Inc. to success in the private label and co-pack industry. Specifically, Mrs. Rainwater was hired as vice president of sales and marketing, and Ms. Ragozzino expected her to increase Ragozzino Food, Inc.'s customer base in the private label and co-pack industry.

On January 18, 2013, Ragozzino Food, Inc. sent a formal offer letter to Mrs. Rainwater, which Mrs. Rainwater accepted and returned via email to Ms. Ragozzino. Plaintiff alleges that this mentioned that Mrs. Rainwater would have to enter a "non-compete or confidentiality

---

[1] A private label is a product manufactured or packaged for sale under the name of the retailer rather than that of the manufacturer. *See* Compl., Dkt. # 6, at p. 3 n.1. A co-pack is a company that manufacturers and packages foods or other products for their clients and works under contract with the hiring company to manufacture food products as though they were manufactured directly by the hiring company. *See* Compl., Dkt. # 6, at p. 3 n.2.

agreement . . . at a later date if [she] chose to accept the offer."[2] Compl., Dkt. # 6, at p. 5. The offer letter also stated, "Please note that terms and conditions of this offer of employment as contained in this letter supersede any previous discussion of employment and any other terms and condition."

On January 29, 2013, Mrs. Rainwater resigned from Food Source, LP in preparation to begin her job at Ragozzino Foods, Inc. That evening, she received an email from Ms. Ragozzino containing the No-Solicitation, Non Compete and Confidentiality Agreement (the "Agreement"). The Agreement stated:

> (b) **Upon Termination of Employment**: For a period of twelve (12) months after Employee's employment with Ragozzino ends Employee shall not perform duties for, shall not directly or indirectly, either individually or as an employee or independent contractor, agent, partner, shareholder, consultant or in any other capacity participate in, work for, engage in or in any way provide services or be affiliated with in any manner any of the following entities or their affiliates or subsidiaries:
> i. Windsor Foods
> ii. Marzetti Foods
> iii. Louisa Foods
> iv. Fairmont Foods
> v. Food Source
> vi. Request Foods
>
> The period of time during which Employee is prohibited from engaging in activities pursuant to the Paragraph shall be extended by the length of time during which Employee is in breach of the terms of this Paragraph.

Agreement, Dkt. # 17-2, at p. 13–14..

During her tenure at Ragozzino Foods, Inc., Mrs. Rainwater worked on numerous accounts. At the time of her termination, these accounts had just begun to confirm their intent to move forward through her with Ragozzino Foods, Inc. for multiple product offerings. Mrs.

---

[2] The Agreement is actually a "No-Solicitation, Non Compete and Confidentiality Agreement." (Dkt. # 17-2, at p. 10).

Rainwater estimates that her effort would generate a minimum of $8 to $12 million a year, potentially escalating to $20 million after two to three years and product line expansion.

On January 16, 2015, Ms. Ragozzino telephoned Mrs. Rainwater and told her that she was terminated from employment at Ragozzino Foods, Inc., due to reorganization. At that time, Mrs. Rainwater requested Ms. Ragozzino to release her from her the Agreement, and Ms. Ragozzino indicated that she would do so. Ms. Ragozzino also offered to write Mrs. Rainwater a letter of recommendation to aid in her job search. At some later date, Mrs. Rainwater asked Ms. Ragozzino if she had the time to write her the recommendation letter, and Ms. Ragozzino responded, "Sorry, so busy, stay tuned!" Mrs. Rainwater never received the recommendation letter.

On May 6, 2015, Mrs. Rainwater traveled to Minnesota for a formal interview for a position with Down's Food Group, for a position that would be comparable to her position with Ragozzino. Ms. Ragozzino knew about Mrs. Rainwater's interview with Down's Food Group and even wished Mrs. Rainwater luck before she left. Mrs. Rainwater asserts that after the interview, the president of Down's Food Group, Mike Downs, said to her, "Get [Ms. Ragozzino] to release you from the non-compete, and we will move forward and go from there." Compl., Dkt. # 5, at p. 7.

On May 11, 2015, Mrs. Rainwater emailed Ms. Ragozzino and requested to be released from the Agreement. On May 13, 2015, Ms. Ragozzino replied to Mrs. Rainwater's email, stating that she would not be releasing her from the Agreement, that it was a business decision, and wished her luck in her job search. On May 21, 2015, Mr. Downs emailed Mrs. Rainwater to inquire as to whether she had been released from the Agreement.

Mr. and Mrs. Rainwater assert that since this incident, they have suffered tremendously. They allege that they entered into a home mortgage loan relying on Mrs. Rainwater's employment with Ragozzino Foods, Inc. lasting at least two to three years.

Plaintiffs bring the following causes of action against Defendants: (1) breach of contract; (2) violation of section 15.50 of the Texas Business and Commerce Code; (3) tortious interference with prospective business relations; (4) quantum meruit, unjust enrichment, restitution, money counts, or money had and received; and (5) duress. Plaintiffs request consequential damages, loss of earnings, loss of consortium, impairment of past, present and future earning capacity, past and present emotional disturbance, attorney's fees, punitive damages, and court costs. Defendants now move to dismiss all of Plaintiffs' claims.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A court should grant a 12(b)(6) motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* When a court analyzes a 12(b)(6) motion, it "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Beaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal citations omitted).

Although "[o]n a Rule 12(b)(6) motion, a district court generally must limit itself to the contents of the pleadings, including attachments thereto, . . . [t]he court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).[3]

## ANALYSIS

### I. Plaintiffs' Breach of Contract Claim

Plaintiffs allege that Defendants' Offer of Employment constituted a valid and enforceable contract, which Defendants breached by firing Mrs. Rainwater after two years of employment, just as Mrs. Rainwater's accounts were beginning to confirm their intent to carry many of Ragozzino Food, Inc.'s products. Plaintiffs allege that confirmation of these accounts

---

[3] Defendants attach a copy of what Plaintiffs refer to as the "employment contract" to their Motion to Dismiss. *See* Dkt. ## 9-1; 17-2, at p. 7–8. Plaintiffs also attach a copy of it to their Response, as well. This document is central to Plaintiffs' breach of contract claims, it is referenced in Plaintiffs' Complaint, and no party objects to the court's consideration of it. The court therefore considers the alleged "employment contract" in its analysis of Defendants' Motion to Dismiss.

Plaintiffs also attach a copy of the Non-Compete Agreement to their Response. *See* Dkt. # 17-2. This document is central to Plaintiffs' claims under section 15.50 of the Texas Business and Commerce Code, and their claim of tortious interference with prospective business relations. The Non-Compete Agreement is referenced in Plaintiffs' Complaint, and both parties reference it in their briefing. The court therefore also considers the Non-Compete Agreement in its analysis of Defendants' Motion to Dismiss.

would have resulted in Mrs. Rainwater receiving a higher salary. Defendants argue that Plaintiffs' breach of contract claim must fail because (1) the Offer of Employment did not constitute an employment contract; and (2) regardless of whether Defendants are entitled to a dismissal of the instant claim by Mrs. Rainwater, they are entitled to dismissal of the claim by Mr. Rainwater, as he was never employed by Ragozzino Foods, Inc.

"Texas follows the traditional rule that employment contracts may be terminated by either party at will and without cause, absent an express agreement limiting the right of termination." *Collins v. Allied Pharm. Mgmt., Inc.*, 871 S.W.2d 929, 933 (Tex. App.—Houston [14th Dist.] 1994, no writ) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)). "Thus, there are two essential elements to a breach of employment contract cause of action: (1) the existence of a contract specifically and directly limiting the employer's right to terminate the employment contract at will; and (2) the employment contract must be in writing." *Collins*, 871 S.W.2d at 833 (citing *Stiver v. Tex. Instruments, Inc.*, 750 S.W.2d 84, 846 (Tex. App.—Houston [14th Dist.] 1988, no writ)).

Plaintiffs allege that "[t]his case arises out of an employment contract entered into by Rhonda Rainwater and Ragozzino Foods, Inc." Compl., Dkt. # 5, at p. 3. Plaintiffs further allege that:

> The agreement between Plaintiff Rhonda and Defendants constituted a valid and enforceable contract in this case. Plaintiff Rhonda and Defendants entered into an employment contract on January 18, 2013. In the contract terms, Plaintiff Rhonda was entitled to 1% of FOB CT Price for first year of new item's launce, and ½ % thereafter. Plaintiff Rhonda is [sic] proper party to sue for a breach of agreement. Plaintiff Rhonda performed, tendered performance of, or was excused from performing her contractual obligations. Defendants breached the agreement and said breach caused Plaintiffs' injury.

Compl., Dkt. # 5, at p. 8. The "employment contract" to which Plaintiffs refer is the Offer of Employment that Ms. Ragozzino emailed Mrs. Rainwater on January 18, 2013. *See* Pl. Resp.,

7

Dkt. # 17, at p. 6–8 (citing to "Employment Contract," which is Exhibit 1A, the Offer of Employment, attached to Plaintiffs' Response).

This document does not "specifically" or "directly limit[] the employer's right to terminate the employment contract at will." *See Collins*, 871 S.W.2d at 833; *see also* Offer of Employment, Dkt. # 17-2, at p. 7–8. Rather, this document states:

> Employees do not have a contract with Ragozzino Foods. Your employment with Ragozzino Foods is at-will. This means that you have the right to leave your employment for any or for no reason, with or without notice. Ragozzino Foods can also terminate your employment at any time for any reason or for any reason or for no reason, with or without notice.

Dkt. # 17-2, at p. 7. This document clearly does not limit the right of Ragozzino Foods to terminate the employment at will—it explains that Mrs. Rainwater would not have an employment contract with Ragozzino Foods and that her employment with Ragozzino Foods is at-will. Because no employment contract exists, Plaintiffs' breach of contract claim must fail. The court dismisses Plaintiffs' breach of contract claim against Defendants.

II. **Plaintiffs' Claim that Defendants Violated Section 15.50 of the Texas Business and Commerce Code**

Regarding their claim under section 15.50 of the Texas Business and Commerce Code, Plaintiffs allege:

> On January 18, 2013, a formal offer letter was sent to [Mrs. Rainwater] and was accepted and returned via email to [Ms. Ragozzino]. . . . Within the email it was mentioned that there would be a non-compete or confidentiality agreement to be signed at a later date if [Mrs. Rainwater] chose to accept the offer. . . . On January 29, 2013, [Mrs. Rainwater] resigned from [her prior employer]. An email that [sic] was sent later that evening containing the non-compete agreement and [Mrs. Rainwater][4] was too tired to read it. . . . [Mrs. Rainwater] at this point had already resigned from [her prior employer]; signed the offer letter from [Ms.

---

[4] Plaintiffs' Complaint actually states that "Nancy" was too tired to read the email. Based on the context, this appears to be a typo, and the court assumes that Plaintiffs meant to write that Rhonda Rainwater, one of the Plaintiffs, was too tired to read the email. *See* Compl. Dkt. # 5, at p. 5.

> Ragozzino]; and almost 10 days later, [Ms. Ragozzino] requested that [Mrs. Rainwater] sign the non-compete in order to be fully employed.
>
> ***
>
> Plaintiff Rhonda entered into an employment contract with defendants. The employment contract is enforceable. Thereafter, Plaintiff [Mrs. Rainwater] signed a non-compete clause, without consideration, and after resigning from her previous employer. The non-compete clause is not enforceable because the non-compete is not ancillary or part of an already enforceable agreement.
>
> Further, and without waiving the aforementioned, Defendants did not restrict the non-compete by geographical location. Thereby, the non-compete is not enforceable.

Compl., Dkt. # 5, at p. 4–6, 8–9.

Pursuant to section 15.50, a non-compete agreement is

> enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COMM. CODE ANN. § 15.50(a).

Plaintiffs argue that the Agreement violates section 15.50(a) because (1) Mrs. Rainwater did not receive consideration in exchange for entering the Agreement; (2) the Agreement is not ancillary or part of an already enforceable agreement, and (3) the Agreement does not include a geographical restriction. Defendants argue that Plaintiffs' claims fail as a matter of law because (1) Mrs. Rainwater received consideration in the form of Ragozzino Foods, Inc.'s confidential or proprietary information, which she received for nearly two years after her employment began; (2) regardless of whether the nature of Mrs. Rainwater's employments was at-will or for a term contract, the Agreement is ancillary to an enforceable employment agreement; and (3) a geographical restriction was not necessary for the Agreement to be enforceable.

Defendants' arguments regarding the Agreement are factual arguments, which are better suited to a motion for summary judgment. Plaintiffs' allegations regarding the Agreement, if

9

true, could establish that the Agreement is unenforceable. The court declines to decide whether the Agreement is enforceable at this time.

However, Mr. Rainwater was not a party to the Agreement, so to the extent that Mr. Rainwater is bringing a claim against Defendants regarding the Agreement, those claims are dismissed.

## III. Plaintiffs' Tortious Interference Claim

Plaintiffs allege the following regarding their claim for tortious interference with prospective business relations:

> Defendants are liable for tortiously interfering with Plaintiff [Mrs. Rainwater's] prospective employment contract with Down' Food Group. Plaintiff [Mrs. Rainwater] had a reasonable probability to enter into an employment contract with Down's Food Group; Defendants acted maliciously by intentionally preventing the formation of the relationship with the purpose of harming Plaintiffs; Defendants provided no justification for failing to release Plaintiffs from the non-Compete; and Plaintiffs suffered actual harm and damages as a result.

Compl., Dkt. # 5, at p. 9. Relatedly, Plaintiffs allege that Mrs. Rainwater asked to be released from the Agreement, that she interviewed with a prospective employer who prompted her to request be released from the Agreement, that Ms. Ragozzino knew that Mrs. Rainwater interviewed with that employer, that Mrs. Rainwater requested a second time to be released from the Agreement, and that Ms. Ragozzino refused to release Mrs. Rainwater from the Agreement. Compl., Dkt. # 5, at p. 6–7.

To state a claim for tortious interference with prospective business relations, a plaintiff must allege facts showing:

> (1) there was a reasonable probability that the parties would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of

the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

*Braziel v. Medtronic, Inc.*, No. 4:12cv426, 2012 WL 4092600, at *5 (E.D. Tex. Aug. 22, 2012) (citing *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). Plaintiffs' allegations, if true, could state a claim for tortious interference with prospective business relations against Defendants.

Defendants argue that if the Agreement is valid and enforceable as a matter of law, then that agreement cannot form the basis of Plaintiffs' tortious interference claim. Because the court declined to consider at the 12(b)(6) stage whether the Agreement was valid and enforceable as a matter of law, the court declines to dismiss Plaintiffs' tortious interference claim on this ground. The court declines to dismiss Mrs. Rainwater's tortious interference claim at this stage.

However, Mr. Rainwater was not a party to the Agreement and was not seeking a business relationship with Down Foods, Inc., so to the extent that Mr. Rainwater is bringing a tortious interference claim against Defendants, that claim is dismissed.

### IV. Plaintiffs' Quantum Meruit / Unjust Enrichment Claim

Plaintiffs allege the following regarding their quantum meruit / unjust enrichment claim:

> Defendants unjustly received benefits at the expense of Plaintiffs through its wrongful conduct. Defendants continue to unjustly retain benefits at the expense of Plaintiffs. It would be unjust for Defendants to retain any value it obtained as a result of its wrongful conduct. Plaintiffs are entitled to full restitution of all amounts in which Defendants have been unjustly enriched at Plaintiffs' expense.

Compl., Dkt. # 5, at p. 10. Defendants argue that these claims must be dismissed because Plaintiffs cannot recover in quantum meruit or unjust enrichment if they are also recovering under an express breach of contract claim. The court has dismissed Plaintiffs' breach of

employment contract claim, so the court will not dismiss Plaintiffs' quantum meruit / unjust enrichment claim under Defendants' theory.

However, Mr. Rainwater was not employed by Defendants, so to the extent that Mr. Rainwater is bringing claims for quantum meruit / unjust enrichment against Defendants, those claims are dismissed.

## V. Plaintiffs' Duress Claim

Plaintiffs allege the following regarding their duress claim:

> Defendants obtained a valuable advantage over Plaintiff [Mrs. Rainwater] by coercing Plaintiff [Mrs. Rainwater] into acting against her free will by entering into the non-compete clause. Plaintiff [Mrs. Rainwater] signed the employment contract. The employment contract was enforceable. Plaintiff Rhonda resigned from her previous employer, Food Source, LLP. Thereafter, Defendants requested Plaintiff [Mrs. Rainwater] to sign the non-compete, or employment contract was not enforceable. Plaintiff [Mrs. Rainwater] acted against her free will by submitting to a condition against her own interest. As a result, Plaintiffs suffered injury.

Compl., Dkt. # 5, at p. 10.

"Economic duress occurs when one party takes unjust advantage of the other party's economic necessity or distress to coerce the other party into making an agreement." *In re RLS Legal Sols., L.L.C.*, 156 S.W.3d 160, 163 (Tex. App.—Beaumont 2005, no pet.). "A party claiming duress must show a threat by the other party to do something which the other party had no legal right to do, the threat destroyed the free agency of the person to whom it was directed, the restraint caused by the threat was imminent, and the person against whom the threat was directed had no means of protection." *Id.*

Based on the allegations in Plaintiffs' Complaint, Mrs. Rainwater was aware of the requirement to sign the Agreement before she accepted her offer of employment. *See* Compl., Dkt. # 5, at p. 4–5 ("On January 18, 2013, a formal offer letter was sent to [Mrs. Rainwater] and

was accepted and returned via email to Ms. Ragozzino . . . . [w]ithin the email it was mentioned that there would be a non-compete or confidentiality agreement to be signed at a later date if [Mrs. Rainwater] chose to accept the offer."). Mrs. Rainwater was not forced to sign the Agreement. Mrs. Rainwater could have declined to accept the Offer of Employment upon reading that a non-compete agreement would be signed at a later date if she chose to accept the offer. Plaintiffs allege no facts supporting that Mrs. Rainwater was forced to sign the Agreement against her free will. Plaintiffs' facts, as alleged, do not state a claim for duress. Plaintiffs' duress claim is dismissed.

## VI. Mr. Rainwater's Loss of Consortium Claim

Defendants move to dismiss Mr. Rainwater's loss of consortium claim. Plaintiffs concede that it should be dismissed. The court therefore dismisses Mr. Rainwater's loss of consortium claim.

## CONCLUSION

IT IS ORDERED THAT Defendants' Motion (Dkt. # 9) is GRANTED IN PART and DENIED IN PART. The court dismisses (1) Mrs. Rainwater's breach of employment contract claim; (2) Mrs. Rainwater's duress claim; and (3) all of Mr. Rainwater's claims. The court declines to dismiss (1) Mrs. Rainwater's claims pursuant to section 15.550 of the Texas Business and Commerce Code; (2) Mrs. Rainwater's tortious interference claim; and (3) Mrs. Rainwater's quantum meruit and unjust enrichment claims.

**So ordered and signed on**

**Mar 10, 2016**

_____
Ron Clark, United States District Judge